The third case this morning, that's Murdock v. City of Chicago. Mr. Flaxman? Unless the court has specific areas in which they'd like to direct me to immediately, I'd like to address four areas in my presentation. The first is the Alcord decision. The second is the special order of the police department. The third is the administrative order of the chief judge of the circuit court. And the fourth is the misapplication, we contend, of Rule 12c in this case. In Alcord, the court was confronted with a novel claim. The plaintiff contended that the plaintiff's decedent had committed suicide because of a municipal policy that prevented him from posting bond at the police station. This court, in jail suicide cases, has always looked for or insisted upon some showing of fault. That somebody did something wrong, but they knew the person who killed himself or herself was at risk. None of that was here, and the claim underlying Alcord was a fanciful claim. It wasn't going anywhere, even if he had been held for 65 hours before being allowed to post bond. It had nothing to do with his death. The court, though, in its decision, said the law is that as long as you receive a bond hearing within 48 hours, even when you were arrested on a warrant and there's been a judicial determination of probable cause, that's proper because the Fourth Amendment allows the government 48 hours to hold a bond hearing. In Mitchell v. Doherty, this court, in a very thoughtful, comprehensive opinion, rejected that argument. It said, no, that the 48-hour rule, as we've held repeatedly before, is just for a judicial determination of probable cause when there's been an arrest without a warrant. It has nothing to do with when there's an arrest with a warrant, nothing to do with bond. It's just when there's an arrest without a judicial determination of probable cause. The Alcord decision was not circulated to the court. It was not the subject of a hearing in Banff, and it should be viewed as a nonbinding dicta that did not control this case. When I look at Alcorn, it says, given Riverside, the answer is obvious. Federal law does not prohibit presenting the arrestee to a local judge, provided that this is accomplished in a reasonable time not to exceed 48 hours. And so is there a suggestion that Alcorn stands for the proposition that the bond hearing has to also happen within 48 hours? That's what they said. And Riverside says that the 48-hour rule doesn't apply when a person is arrested pursuant to a warrant issued by a magistrate and is showing a probable cause. That's at page 143 of Riverside. I don't know what the court was thinking, but they were— Where do they tie it to the bond hearing? The issue in Alcorn was what the court viewed as the second bond hearing mandated by the chief judge of the Circuit Court of Cook County when people were arrested on a warrant issued outside of Cook County. But in the opinion itself, is there a representation that the bond hearing has to happen within 48 hours? I think that's absolutely clear. The city reads Alcorn in their brief at 28, that a person arrested on a warrant that specifies a bond amount does not have a constitutional right to pay that bond to police immediately following their arrest. The Fourth Amendment permits a state to require that the arrestee must appear in court before posting bond. And I think at page 1064 of the Alcorn opinion, the court states that Riverside County allows the police to hold a person arrested on a warrant for a bond hearing even when bond has been set in the warrant as long as the hearing occurs within 48 hours of arrest. The city of Riverside had nothing to do with the arrest when there's a warrant, and the court got it wrong. And you said you're on 1064 of that opinion, where that language is? That's what my notes show it was. I don't have it. I could probably find it, but I think it's there. Here we have the plaintiffs. They were arrested based on warrants, right? That's right. For which some judicial officers already determined that there's probable cause. That's right. And so looking at Mitchell, the Mitchell court concludes that in short, we hold that the Fourth Amendment does not require even a bail hearing within 48 hours after arrest, right? I guess it's express holding that there is no requirement. If that was our holding, it would say the Bail Reform Act was unconstitutional, and it would be contrary to common law, and that's what the loose language in Alcorn says, and the court should not follow it. So here, were all the plaintiffs provided a bail hearing or bond hearing within 48 hours? Well, no, there is no bond hearing. What we pointed out from Mr. Neal's testimony is that when you're arrested on a warrant and you're brought before a judge other than the one who issued the warrant, that judge is going to say, I don't know anything about this case. I don't know anything about you. This other judge said it should be $500 to get out. That's the same bond to stand. There is no second bond hearing. The other thing, which is getting into the third point, the administrative order, if we read that carefully the way plaintiffs would ask that the court read it, it doesn't mandate a second bond hearing. The last paragraph. I guess where I'm struggling is if you're asking us to find that there was a Fourth Amendment violation. I'm asking you to find that the district judge was wrong in dismissing and granting a motion for judgment as a matter of law. And the law is settled that when there's been a determination of probable cause and you're arrested on a warrant, you have a liberty interest in posting that bail and getting out of jail. This court held in Doyle versus LCM, this footnote, and I think six or seven other circuits expressly hold that on different theories, but they all agree that once bail has been set, you're entitled to post it. And holding you for no reason is a constitutional violation. Under what amendment? There is no reason in this case. That's the whole thing. The special order that underlies this case. I'm trying to drill down on what is the constitutional violation. It's a Fourth Amendment violation. And what is the Fourth Amendment violation that you are articulating for the court? That it's an unreasonable seizure to hold someone after, when they are in custody following a judicial determination of probable cause where bond has been set and they're ready, willing, and able to post bond. How quickly must they be allowed to post bond? So in other words, what if there is no administrative way or they can't, you know, the processing and all of that stuff. What would you say about is there a time limit in which they must be allowed to post their bond? No. There is no time limit. Is it a reasonableness? I mean, does the Constitution impose any time limit? I think we have to apply this to the City of Chicago Police Department and the way they apply their policy. The City of Chicago, after you're arrested on a warrant, checks to make sure that you're the person sought in the warrant and that there are no other warrants seeking that you be held. Once that's done, there's a, a sergeant who's authorized to accept bond. And when somebody has the bond, they should be allowed to pay it. But even if we find that they violated the policy, the state policy. They didn't violate the state policy. I want to go back to the previous question that Judge Lee posed, is at what point along the spectrum, the time spectrum, does continuing to hold them become unreasonable? This isn't about time. This is about a specific application of this policy. Under the Fourth Amendment, the question is, allow me to finish. I'm sorry. It's fine. Under the Fourth Amendment, the question becomes unreasonableness. And so I'm asking for you to articulate what makes it unreasonable. It's unreasonable, and I'm sorry if I cut you off. It's fine. It's unreasonable to hold somebody overnight at the police station and transport them in a squad crawl, handcuffed, to see a judge in the afternoon who's going to say, same bond to stand. So the bright line test for determining who's been agreed by this policy is when you're held overnight, brought to a judge, and you're able to post bond. So immediately. Immediately. When those other things have happened, able to pay, bond has been sent, you must be immediately released. And those are all, as we pointed out, and I think we followed the class motion, those are easily ascertainable facts. We have records of who's transported and when they're there. We have records of when they're allowed to post bond. So what is, you know, I guess I'm just trying to figure out what the rule would be. Let's say you're arrested in the morning at 7 a.m., right? And you are not allowed to post bond until 5 p.m. that day. Would that be an unreasonable application? That would not happen in Chicago. If you're brought in at 7, you're held until the next day. I know. Just go with me here, Mr. Flaxman. So I'm just trying to figure out, you know, one of our tasks is to figure out and articulate a rule that would govern. And what you're saying, what you're providing us, is kind of what the rule shouldn't be, right? You're saying that the rule can't be that they have to wait overnight. And so I'm just trying to ferret out what you think the rule should be. Well, what the rule should be is unreasonableness, which would be a case-by-case determination. In our proposed class, unreasonableness is measured by being held overnight and being brought to see the judge the next morning. You only get to the constitutional violation through Monell. And there I'm seeing some issues because, to me, if there is a policy, the policy is driven by the court orders. You either read them the way Judges Jerkin and Feinerman did, and CPD is bound, or you don't read them that way, and then there's no express policy. So how are you getting to liability for CPD? Well, the express policy was adopted by the CPD in 2012, and nobody knows why or has been able to tell us why they adopted the policy. The court, the general administrative order that Judge Feinerman said they were relying on was adopted in 2015. The city didn't amend its special order until 2012, and they maintained the special distinctions in their order, but different than what the Chief Judge's order was by saying, we'll let you postpone on a Chicago warrant, and we won't let you do that on weekends and holidays. Everybody else has to go see a judge who's going to let you postpone. The other thing is the question that is apparent from that special order, or the administrative order of the judge, does he really say you're not allowed to postpone until you have a second bond hearing, as the Alcorn Court described it, or is he saying if you're able to postpone, you can? The special order, which we set out in the brief in numbered sentences, the last two sentences are one paragraph. The first sentence relates to duties of the sheriff. The second sentence uses consistent passive voice, doesn't identify anyone, and seems to say that if you have bond, you can postpone and get out. I'm running out of time. Sorry. I lost my train of thought.  What Judge Feiderman said was, well, it doesn't matter what the city's intent was in adopting the rule, which is different than the one that was subsequently articulated by the Chief Judge. It's an objective standard. It's sort of like qualified immunity. Could the municipality have concluded, after 2015, that it should continue its rule because it was maybe consistent? But we don't have qualified immunity in municipalities. We have an objective standard. If we put this to a jury, the defense of, well, we were compelled by that circuit court order to adopt this policy, the jury would say, would think, I hope, well, why did you adopt the policy in 2012? Why did you adopt a different policy? Why didn't you conform your policy to the court's policy in 2015? Why didn't you do it in 2019 when you changed the policy, or when you reenacted the policy? A jury would say, that wasn't compelled. That's just something some very creative lawyer made up to try to win a lawsuit. Thank you, Mr. Fletcher. I did have a follow-up question. If we didn't touch on this, is the equal protection claim, and I didn't know if you had presented already why the policy itself was irrational. Well, there's no distinction between somebody arrested in Bolingbrook or somebody arrested in Chicago, somebody arrested in a suburb of Chicago outside of Cook County. What the city argued is that, well, we have to, the clear system doesn't work outside of Chicago, which is facts that should not be considered under Rule 12c motion. We showed, however, that the clear system has nothing to do with warrants, that it's the lead system, which is universal throughout the state. And the city said, well, it doesn't matter because there's no Fourth Amendment violation. Thank you. Thank you. Mr. Merrill, is it? Yes, Merrill. Thank you, and may it please the Court. Plaintiffs were each arrested on warrants, and they were required to appear in local bond court before they could be released. Two general orders of the Circuit Court of Cook County required Chicago police to take that action, and the requirement to appear in court before posting bond was upheld by this court just two years ago in Alcorn v. City of Chicago as not a violation of the Fourth Amendment. Other than their equal protection claim, which is based on a counterfactual reading of the police department's special order, plaintiff's case is nothing more than a request to revisit and overturn Alcorn. The district court's grant of judgment on the pleading should be affirmed. Starting with the merits of their two claims, the Fourth Amendment claim is the exact claim raised in Alcorn, which this court rejected two years ago. Just like here, the plaintiff in Alcorn challenged the policy of not allowing certain warrant arrestees to post bond, and this court held that that requirement does not violate the Fourth Amendment because consistent with Riverside County v. McLaughlin, quote, federal law does not prohibit presenting the arrestee to a local judge provided that is accomplished in a reasonable time not to exceed 48 hours. Alcorn in this case involved the same purported policy and the same Fourth Amendment claim, and Alcorn is entirely and unequivocally dispositive. Plaintiffs argued in their briefing, although not here today, that the holding of Alcorn decision was dicta. We believe that is nonsense. It was the central holding of the Fourth Amendment claim, which was squarely presented to the court. This court is presented with alternative grounds all the time to affirm judgment, and this court's choice to choose just one of those bases in its opinion in Alcorn, the Fourth Amendment merits not causation, does not transform that holding into dicta. Simply put, Alcorn should be the beginning and the end of their Fourth Amendment claim. Do you agree with counsel that there is contradiction in Mitchell-Dottery v. Alcorn looking at those two cases? No, I don't believe so. In Mitchell, they were dealing with the person was still attending court. They were going for a probable cause hearing. They were saying the separate determination of bond could take place at a later time. What Riverside County is looking at is when you arrest someone, there are steps that police officers have to take incident to that arrest. The 48-hour presumption is simply a recognition of those many steps that police officers have to take and say, well, if it's within 48 hours, we're going to presume, of course, it could be overcome, that it was a reasonable amount of time. Here, they were arrested, and incident to that arrest, the presumption should apply because that is how much before they were taken to court. Now, there's even opinions of this court in Chordick and in Portis where there's fine-only offenses, and the court said that the rationale underpinning McLaughlin still applies because this police officer still has to take essentially the same steps incident to arrest before they could be released on a fine-only offense. While here, there was a court appearance that by law, state law, they had to attend, even if there wasn't, this court has indicated that kind of similar considerations come into play underpinning the rationale in McLaughlin. Now, as for their equal protection claim, they allege that the city's express, written, special order, individuals arrested on weekdays on warrants in Chicago are permitted to postpone while persons arrested on warrants from outside Chicago or on weekends are not. I would like to say that that allegation finds no support in the text of the special order. On the contrary, the written special order states that both categories of arrestees will be transported to court. Section 4B states that the station supervisor will ensure that all persons arrested on a Cook County Sheriff's warrant are turnable to the first municipal district, that's Chicago, are transported from the district to the rest of the court of insurance, and just two lines below that in Section 4B, it also states that all persons arrested on warrants outside of the first municipal district or on warrants on weekdays and holidays will be transported to court. In other words, the plain text of the special order states that both categories of warrant arrestees will be transported to court, so therefore, Appellant's equal protection claim, which exclusively pled municipal liability based on this express written order, is based on a completely made-up counterfactual reading of the city's written special order, which is utterly discredited by the text of the special order so that they attach it as an exhibit to their pleadings, which is why it was able to be decided on a judgment on the pleadings. So your concern is there is no distinction between the two classes? Yes. In the written special order of CBD, there is no distinction between the parties giving rights to an equal protection claim. It's a fantasy based on what the special order actually says on its text. What about in practice? I mean, we're at the pleading stage. I don't have any discovery to know whether the practice is different, but at the end of the day, they did not base their, the factual cause of their Monell liability against the city isn't on some widespread practice or failure to train or whatever it be. It's based on the explicit special order, which doesn't say what they say it says. Now, while those two bases, the Alcorn rationale for the Fourth Amendment claim, the failure to plead any equal protection claim is enough to affirm, an alternative reason why both Appellant's claims fail is that the city's special order is not the cause of their purported injury of having to attend court. Municipal liability requires the city's policy to be the moving force behind their alleged injury, and without such causation, their Monell claims must fail. So if we look at the text of the various orders involved in this case, the language of the city's special order essentially mirrors the language of the two general orders issued by the Circuit Court of Cook County. One of those court orders requires police to transfer to court those arrested on warrants on weekends and those on non-Chicago Cook County warrants. That's Order 2004-02. And the other court order requires all persons arrested in Cook County on out-of-county warrants to appear on court. That's Order 2015-06. In other words, even if the Chicago police had never adopted its special order, the Circuit Court's orders would have still required each of the Appellants to appear in court. Because of this, the special order could not have been a necessary condition of Appellants' purported injury, because again, if it didn't exist, the legal requirement would have remained the same. As this Court has repeatedly expressed in Snyder v. King, in Bethesda Lutheran Homes, in Surplus Store, a city's decision to adhere to a mandatory directive from state law is not an exercise of any meaningful independent discretion, let alone final policymaking authority, and it is the state law, not the follow-through, which is the cause of the alleged harm. Here, the Court's orders, not the city's follow-through in executing those court orders, was the moving force behind their purported injuries. And just to be clear, this is not an affirmative defense, at least not in the way that Appellants portray it in their reply brief. Causation is an element of a Section 1983 claim that Appellants bear the burden of proving. If Appellants cannot identify a city policy that was the actual moving force behind their injuries, then their municipal liability claim can't proceed. If your Honors have no further questions, we're prepared to rest in the briefing on the other points. Thank you. For these reasons, the judgment of the District Court should be affirmed. Mr. Flexman, I'll give you another minute if you have something to rebuttal. This is the first time I've heard the argument from the city that the special order does not require, as the district judge said, that persons arrested on weekends and holidays on Chicago warrants have to go to bond court. I think the court can read the special order itself, but it's really surprising that we haven't heard that before in the cases that have been litigated since 2020, that this comes up now the first time in an oral argument. I think it's just exuberance on the part of my colleagues. My brother at the bar. The equal protection extends not just to suburbs of Chicago and Cook County, not just to weekends and holidays, but it also extends to suburbs of Chicago and Cook County, and we haven't heard any explanation for why the city adopted that policy in 2012. I don't think that's going to happen. Probably if we have a trial, there will not be any. Thank you.